IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANTON-NEGLEY DRUG COMPANY, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-1309 |
| PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE; ESTELLE RICHMAN, SECRETARY OF THE PENNYSLVANIA EPARTMENT OF PUBLIC WELFARE, *et al.*, | ) ) ) ) ) ) | Hon. Nora Barry Fischer U.S. District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Plaintiffs Stanton-Negley Drug Company and Meyer and Steve Simon (hereinafter "Plaintiffs" or "Stanton-Negley") brought this lawsuit naming the following agencies and individuals as Defendants: (1) Pennsylvania Department of Public Welfare; (2) Estelle B. Richman, Secretary of Pennsylvania Department of Public Welfare; (3) Office of Medical Assistance Programs; (4) James L. Hardy,[1] Acting Deputy Secretary of the Office of Medical Assistance Programs; (5) Office of Administration, Contract Policy, Management and Procurement, a subdivision of the Department of Public Welfare; and (6) Daniel R. Boyd, Official-In-Charge, Division of Procurement, Department of Public Welfare (hereinafter "Defendants"). (Docket No. 1).

---

[1] Michael Nardone has replaced James L. Hardy as Deputy Secretary for Medical Assistance Programs and is hereby substituted as a party in accordance with Fed. R. Civ. P. 25(d)(1). (Docket No. 5, at FN 1).

1

## II. FACTUAL BACKGROUND

Stanton-Negley is a Pennsylvania corporation owned and operated by Plaintiffs Meyer and Steven Simon, who are licensed pharmacists. (Docket No. 1, at ¶ 1). Stanton- Negley and Plaintiffs are participants in the Pennsylvania Medicare and Medical Assistance Programs ("MA"), providing products and drugs to the recipients of such programs as directed and requested by the receipient's medical providers or the beneficiaries. *Id.*

Plaintiffs brought this action in response to a program for "Specialty Pharmacy Drugs" scheduled to be implemented by Defendants. (Docket No. 5, at 1). On October 5, 2006, the Defendants issued a Request for Proposals ("RFP") No. 31-06 seeking the creation and implementation of its proposed Specialty Pharmacy Drug Program. (Docket No. 1, at ¶ 9). Pursuant to RFP No. 31-06, MA recipients that are prescribed one or more specialty drugs covered by the Specialty Pharmacy Drug Program would be required to secure the drugs from preferred providers, selected through the RFP. (Docket No. 1, at ¶ 13). RFP No. 31-06 limits the number of preferred providers of specialty pharmacy services for MA recipients to two (2) contractors selected through a bidding process. (Docket No. 1, at ¶ 10). The deadline for the submission of bids was November 9, 2006. (Docket No. 1, at ¶ 32).

Stanton-Negley Drug Company has existed as a pharmacy for a period in excess of 40 years. (Docket No. 1, at ¶ 14). From July 1, 2006 through June 30, 2007, it received $700,000 of its $2.7 million in revenue from specialty drugs which will be covered by the new Specialty Pharmacy Drug Program. (Docket No. 5, at 5). Until the issuance of RFP No. 31-06, pharmacies were not required to receive accreditation by the Defendants to provide speciality drugs to MA recipients. (Docket No. 1, at ¶ 22). Under the new program accreditation was required to enter a bid. *Id.* The accreditation

process takes eight to fifteen months to complete. (Docket No. 1 at ¶ 18).

Plaintiffs assert that the turn around time from the issuance of the RFP to the submission of offers rendered it impossible for small community pharmacies, like Stanton-Negley, to submit a bid in response to the RFP. (Docket No. 10, at 23). The first public notice that RFP No. 31-06 might contain an accreditation requirement was not made until a draft of the RFP was published in June of 2006. (Docket No. 10, at 6). After this publication, Plaintiff's counsel sent correspondence to the Defendants concerning issues raised by the anticipated RFP, including accreditation, but no response was ever made by the Defendants. (Docket No. 1, at ¶ 17). Final notice that accreditation would be required was given on October 5, 2006, when the RFP was issued. (Docket No. 1, at ¶ 17). Plaintiffs commenced the accreditation process, when they determined that accreditation was necessary, even though there was not enough time to complete the accreditation process and submit a bid to the RFP before the November 9, 2006 deadline. (Docket No. 1, at ¶ 19). In response to the RFP, seven (7) bids were received with zero (0) bids submitted from any existing providers in the program. (Docket No. 1, at ¶ 30).

Plaintiffs assert that the implementation of RFP No. 31-06 would significantly and adversely affect them in their ability to conduct business as a community pharmacy and their ability to practice their professions as pharmacists. (Docket No. 1, at ¶ 35). Plaintiffs assert that RFP No. 31-06 and the envisioned Specialty Pharmacy Drug Program violate the due process and equal protection clauses of the Fourteenth Amendment and 42 U.S.C. 1396a(a)(10)(B) and 1396a(a)(23)(A) of the Medicare Act. (Docket No. 1, at ¶ 8). Plaintiffs seek a preliminary injunction against the Defendants to enjoin them from: considering any offers received in response to RFP No. 31-06, selecting any offerors as providers pursuant to RFP No. 31-06, and implementing the Specialty Pharmacy Drug

Program. (Docket No. 1, at 12). Plaintiffs also seek a Rule to Show cause why a Permanent Injunction should not be entered. *Id*. Lastly, they seek costs, reasonable counsel fees, and such other relief as is just and appropriate. *Id*.

### III. PROCEDURAL HISTORY

On September 9, 2007, Plaintiffs Stanton-Negley Drug Company, Meyer Simon and Steven Simon commenced this due process and equal protection action on their own behalf and on behalf of MA recipients as third parties, by filing a Complaint against Defendants. (Docket No. 1). On December 20, 2007, Defendants filed a Motion to Dismiss the Complaint and Memorandum of Law in Support. (Docket Nos. 4 (See errata at 8) and 5). On January 16, 2008, Plaintiffs filed a Response to said Motion and Brief in Support. (Docket Nos. 9 and 10).

The Court conducted a Case Management Conference in this matter on February 7, 2008, during which counsel for Defendants made an oral motion, which was granted, to file a reply brief relating to the pending Motion to Dismiss and counsel for Plaintiffs made an oral motion, which was granted, to file a sur-reply brief. [22]. Thereafter, on March 8, 2008, Defendant filed a Reply Brief. (Docket No. 25). On March 13, 2008, this Court ordered that "because Plaintiffs conceded that the present action should be dismissed as to Defendants Pennsylvania Department of Public Welfare, Office of Medical Assistance Programs, and the Office of Administration, Contract Policy, Management and Procurement, the same are hereby dismissed with prejudice."[2] (Docket No. 26). Said Order disposed of the 12(b)(1) aspect of Defendants' Motion which addressed this Court's

---

[2] Accordingly, the remaining Defendants in this action include: (1) Estelle B. Richman, Secretary of Pennsylvania Department of Public Welfare; (2) James L. Hardy, Acting Deputy Secretary of the Office of Medical Assistance Programs; and (3) Daniel R. Boyd, Official-in-Charge, Division of Procurement Department of Public Welfare. ( hereinafter "Defendants" or "Defendant State Officials").

jurisdiction over the state agency Defendants. On March 21, 2008, this matter was fully briefed once Plaintiffs filed their Sur-Reply Brief. (Docket No. 29).

Presently before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and (6), asserting venue does not lie in this district; the Plaintiffs do not have third party standing to assert the rights of MA recipients; and the Plaintiffs have failed to state a claim upon which relief can be granted. (Docket No. 4, at 1). In the event that this Court declines to rule on the abstention issue presented by this matter, Defendants next move pursuant to the Federal Rule of Civil Procedure 12(b)(3) for the Court to dismiss or, in the alternative, transfer the case given that venue is improper under 28 U.S.C. § 1406(a). (Docket No. 5, at 2). Because the Court finds that venue is improper in the Western District of Pennsylvania, the Court declines to address the remaining issues presented in Defendants' 12(b)(6) Motion.

### IV. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) authorizes a district court to dismiss an action for improper venue under 28 U.S.C. § 1406(a). Venue in a non-diversity action is governed by 28 U.S.C. § 1391(b). The relevant section reads:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Under § 1406(a) "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case

5

to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). If venue is improper, the district court has limited discretion; it can either dismiss the case or transfer it to a district in which it could have originally be brought. *Id*. "Under §1406(a), the burden is on the moving party to establish that the transfer is warranted." *Brookins v. Red Clay Consol. School Dist.*, No 07-3374, 2007 WL 4294705, at *1 (E.D.Pa. Dec. 6, 2007) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-725 (3d Cir. 1982) (holding that "the defendant should ordinarily bear the burden of showing improper venue in connection with a motion to dismiss" under § 1406)).

## V. DISCUSSION

Plaintiffs' complaint alleges jurisdiction under the United States Constitution, particularly under the provisions of the Fourteenth Amendment, as well as, the Civil Rights Act, 42 U.S.C. § 1983 and the Federal Medicaid Program, 42 U.S.C. § 1396 *et seq* and therefore, venue is governed by 28 U.S.C. § 1391(b). (Docket No. 1, at ¶ 8). Before dealing with the factors set forth in 28 U.S.C. § 1391 to determine whether venue is improper, the Court will first address in what capacity Plaintiffs sued the Defendant State Officials because it is pertinent to this Court's venue determination.

### A. Official Capacity Claims

The Plaintiffs' complaint does not specifically state whether the Defendant State Officials are being sued in their official and/or individual capacities. However, Plaintiffs assert that they are pursuing claims against Defendant State Officials in their individual, as well as official capacities, in their Brief in Support of Plaintiffs' Response to Defendants' Motion to Dismiss. In fact, Plaintiffs argue that "the claims advanced against the named officials in their individual and official capacities are not barred by the Eleventh Amendment and should be allowed to proceed forward." (Docket No.

10, at 10). In Defendants' Reply Brief, they argue that Defendant State Officials had no notice of being sued in their individual capacities, as well their official capacities, because the complaint does not specify and "provides no hint that Defendant State Officials were being sued in anything other than their official capacities." (Docket No. 25, at 7-8).

In this Court's estimation, there are several factors that support an inference that the Defendant State Officials are being sued in their official capacities, only. The complaint names each of the Defendant State Officials setting forth their official titles and listing the addresses of their official principal offices. (Docket No. 1, at ¶¶ 3, 5, 7). For example, the complaint names among the Defendants, Estelle B. Richman, Secretary of the Department of Public Welfare, with her principal office located at the Health and Welfare Building, 7th & Forster Streets, Harrisburg, Pennsylvania 17120. *Id*. at ¶ 3). Additionally, Plaintiffs are seeking injunctive relief along with attorney fees and costs rather than compensatory monetary damages or punitive relief which supports a finding that the Defendant State Officials are being sued in their official capacities. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990); *Sash v. Hogsten*, No. 07-0475 2008 WL 618945, at *1 (M.D.Pa. Mar. 5, 2008) (citing *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000)) ("Where the Plaintiff seeks injunctive relief from official policies or customs, the Defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity ").

Further evidence that Plaintiffs' cause of action is directed against the Defendants' policies and not the individual actions of the Defendant State Officials is the fact that Plaintiffs also brought this action on behalf of MA patients within the forty-two county reach of the Specialty Drug Program. While the Court declines to rule on whether Plaintiffs do in fact have third-party standing

with regard to the MA patients, the fact that the MA patients were included in the action reinforces the Court's conclusion that Plaintiffs' complaint is directed at the policies of the Defendants, which originated and are maintained in the Commonwealth's capitol, Harrisburg, Pennsylvania.

Finally, based on this Court's review of the complaint, there is no indication in any of the pleading that Plaintiffs' claims against the Defendant State Officials are individual capacity claims. The Court, therefore, construes the Plaintiffs' claims against Defendant State Officials as official capacity claims, only, and rejects Plaintiffs' argument in their brief at Docket No.10, at 10. Moreover, given the nature of Plaintiffs' claims, the Court will not permit Plaintiffs to cure their pleading deficiencies by attempting to assert individual capacity claims against the Defendant State Officials by way of an Amended Complaint, as such amendment, in this Court's estimation, would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

**B.     Venue pursuant to 28 U.S.C. § 1391(b)(1)**

As discussed above, the Defendant State Officials in this action are being sued in their official capacities. Defendants, therefore, argue that venue is improper under §1391(b)(1) because the Defendant State Officials do not officially reside in the Western District of Pennsylvania, but rather in Harrisburg, which is located in the Middle District of Pennsylvania. (Docket No. 5, at 9-10). The Court agrees. It is well established that, "for purposes of venue a state official's residence is located at the state capitol, even where branch offices of the state official's department are maintained in other parts of the state." *See Leroy v. Great Western United Corporation,* 443 U.S. 173 (1979); *Cottman Transmission Sys., Inc. v. Marino,* 36 F.3d 291 (3d Cir. 1994); *Perkins v. Snider*, No. 94-4785, 1994 U.S. Dist. LEXIS 13709 (E.D. Pa. Sept. 2, 1994). Accordingly, the Defendant State Officials sued in their official capacities are deemed to reside in Harrisburg,

Pennsylvania. Harrisburg, located within Dauphin County, is within the territory assigned to the Middle District of Pennsylvania. 28 U.S.C. § 118(b). Therefore, proper venue in this case for purposes of 1391(b)(1) is the Middle District of Pennsylvania.[3]

### C. Venue pursuant to 28 U.S.C. § 1391(b)(2)

Plaintiffs contend that venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) "because the activities in the district were substantial and the forum is convenient to each party." (Docket No. 10, at 30). However, Defendants argue that a substantial number of the events surrounding Plaintiffs' claims occurred in Harrisburg, and that the only allegations linking this district to Plaintiffs' claims are the Plaintiffs' location and loss of revenue at that location, neither of which is sufficient to establish proper venue in this District under 28 U.S.C. § 1392(b)(2). (Docket No. 5, at 10-11).

"The leading case for determining when venue is proper under Section 1391(b)(2) is *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979). Although, Leroy was decided prior to the 1990 Amendment of Section 1391(b)(2), it is still controlling to the extent that it informs courts of the relevant considerations for determining venue under Section 1391(b)(2)." *Perkins*, 1994 U.S. Dist. LEXIS 13709, at *4-5. The court in *Perkins*, relying on *Leroy*, held that when a complaint is directed at statewide policies and actions of state officials, proper venue is the district in which those policies and actions took place, not the Plaintiff's residence where she felt the effect of those policies. *Id.* at *5-6. See also *United Dairy Farmers Coop.A. v. Milk C.Com. of Comm. of Pa.*, 47 F.R.D. 1, (W.D. Pa. May 14, 1969) (where Milk Control Commission of Pennsylvania, its members

---

[3]Because the Middle District of Pennsylvania is a proper venue for the case at bar, 28 U.S.C. § 1391(b)(3) does not apply.

9

and the Attorney General were sued in their official capacity as officers of the Commonwealth of Pennsylvania, their official residence was at the state capitol in the Middle District of Pennsylvania and venue over milk dealer's claims was properly laid in that District).

Plaintiffs are bringing this action in response to the implementation of a Specialty Drug Program that affects forty-two Pennsylvania counties. "The Department designed the Program, developed and issued the RFP, and received related responses, including Plaintiffs' bid protest, in Harrisburg." (Docket No. 5, at 10). While Plaintiffs may feel the impact of those polices in the Western District of Pennsylvania, their due process and equal protection claims are directed at the policies and policymakers. Here, the polices are implemented and the policymakers reside in the Middle District of Pennsylvania.

Accordingly, Defendants have established that venue is improper in the Western District of Pennsylvania under 28 U.S.C. 1391(b) and more properly lies in the Middle District of Pennsylvania.

### D. Improper Venue and 28 U.S.C. § 1406(a).

Under § 1406(a) "[t]he district court of a district in which is filed a case laying venue in the wrong division of district shall dismiss venue, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). After a determination that venue is improper, transfer or dismissal is mandatory. *Id.* However, in deciding whether to transfer rather than dismiss the case outright, the court has some discretion; i.e.; it must find that transfer, rather than dismissal, is "in the interest of justice." 28 U.S.C. § 1406(a). "Normally, if there is another district or division in which the action could have been brought, transfer is preferred to the harsh remedy of dismissal." JUDGE WILLIAM W. SCHWARZER, JUDGE A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL 4-67

(2008).

As explained above, venue is improper in the Western District of Pennsylvania. However, in the interest of justice, the Court transfers this case to the Middle District of Pennsylvania.

## VI. CONCLUSION

Based on the foregoing, the Court finds that venue is improper in the Western District of Pennsylvania. The Court HEREBY DENIES Defendants' Motion to Dismiss insofar as it seeks to dismiss this action, and will GRANT its Motion insofar as it seeks to transfer venue. (Docket No. 4 and See errata at 8). Under 28 U.S.C. § 1406(a), the Court may, "in the interest of justice, transfer [the case] to any district...in which it could have been brought." Accordingly, the Court instructs the Clerk of this Court to transfer the case FORTHWITH to the United States District Court for the Middle District of Pennsylvania.

/s/Nora Barry Fischer
Nora Barry Fischer
United state District Judge

dated: April 24, 2008

cc/ecf: All counsel of record